2CANNELLA, Judge.
Plaintiff, Michelle Peterson Manso, appeals in this wrongful death action from a judgment rendered in favor of defendant, State Farm Fire and Casualty Company (State Farm), dismissing her case. For the reasons which follow, we affirm.
On April 7,1995, plaintiff went for a family dinner with her three children, Crystal age 4 years, Christopher age 2 1/2 years and Victoria age 5 months, to the home where her mother lived. The home, hereinafter referred to as the Peterson house, was owned by her father, Edward Peterson, although he did not reside there. They arrived at the Peterson house at about 3:00 p.m. Plaintiffs husband, Frank Manso, arrived at the Peterson house at about 4:30 or 5:00 p.m. Following his arrival, plaintiff instructed her husband to watch the children while she left to go shopping. Plaintiff returned to the Peterson housejsbetween 7:00 and 7:15 p.m. She spoke with her husband briefly, but did not see Christopher. He was not in front of the house when she returned. She assumed that he was in one of the back bedrooms playing with the other children. She went into her grandmother’s bedroom to show her the items that she had purchased. Plaintiff then went next door to show the neighbor her purchases. Just as she knocked on her neighbor’s door, she heard her daughter, Crystal, screaming. She returned to the Peterson house and saw her husband carrying Christopher from the rear yard. Plaintiffs brother-in-law, Robert Mercadal (Mercadal), had discovered Christopher in the swimming pool. An emergency call was placed to 911 at 8:01 p.m. Christopher was taken to the Intensive Care Unit at Ochsner Foundation Hospital. His condition deteriorated and plaintiff was told that the child was brain dead. Christopher expired on April 10, 1995 when disconnected from life support systems.
Plaintiff filed suit against Edward Peterson [1] and State Farm, his homeowner insurer, to recover damages for the loss of her son, Christopher, who died as a result of falling into the swimming pool at the Peterson house. After a one day judge trial and submission of the case, the trial judge rendered judgment the following day in favor of State Farm, dismissing plaintiffs case. It is from this judgment that plaintiff appeals.
On appeal, as in the trial court, plaintiff argues in favor of finding Edward Peterson liable based on two specific negligent acts. First, plaintiff argues that he was negligent because, contrary to parish ordinance, the gates to the swimming pool area did not have a self-closing and locking mechanism. See-ond, |4plaintiff argues his negligence in having an inoperable pool light which contributed to the child’s death.
The trial judge made findings contrary to plaintiffs arguments. The trial judge agreed with plaintiff that the gates were in violation of the ordinance requiring that they be self-closing and locking. However, the trial judge went on to find that this ordinance violation had no relationship to the cause of the accident. Actually, the trial judge found that the child did not enter the pool area through the gates. Rather, he found that the child entered the pool area through the back door of the Peterson house. Therefore, this violation was not a cause of the accident. He made a similar finding regarding the pool light. While it was factually established that the pool light did not work, the trial judge found that this too was not a cause of the accident. First, he found that it was not dark at the time of the accident. Second, he found that, even if operational, there was no evidence that the light would have been turned on at that time. The trial judge found that Mercadal, who found Christopher, had no trouble seeing the child in the pool. Rather, the trial judge found that the cause of the aceident was a lack of supervision by the parents of the child.
On appeal, plaintiff assigns three errors concerning these findings by the trial judge regarding the child’s entrance into the pool area, the pool light and plaintiffs gate closing and lock negligence and argues that the trial judge erred in reaching these conclusions.
*1239 The appellate standard of review on factual questions is well settled. On appellate review of a factual determination, the reviewing court may not set aside the factfinder’s findings of fact in the absence of manifest error or unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979); Canter v. Koehring, 283 So.2d 716 (La.1973). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). , Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. However, a proper review of the record cannot be completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court. There must be a further determination that the factfinder’s conclusion is reasonable in light of the entire record; Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La.7/5/94), 639 So.2d 216, 220.
In this case, after reviewing the entire record, we find that the trial judge’s findings of fact were reasonable based on the evidence presented. Although there were some contradictions in the testimony of the various witnesses, the testimony supports the trial judge’s findings of fact.
No one knew the exact time that Christopher was last seen before he was found in the pool. However, the emergency call was placed at 8:01 p.m. Plaintiff returned to the Peterspn house at about 7:00 or 7:15 p.m. She did not see anyone playing in the front yard. She did not see Christopher at all. When she went into the house, the adults were in the kitchen eating a fish dinner. Plaintiff quarreled with her husband and then went into her grandmother’s | pbedroom. Mark Carver (Carver) testified that after eating he was washing dishes and he heard plaintiffs husband speaking to Christopher. He asked the child where he was going and the child replied that he was going outside. In his deposition, Carver stated that plaintiffs husband let the child out of the back door. However, in his trial testimony he stated that he could not remember where the child went after that conversation. Shortly after that, plaintiffs husband and Carver went outside into the back yard. They went into a shed, located on the .side of the swimming pool, to get some fishing equipment to load into a boat. The boat was in the front of the house. They got the equipment, walked past the swimming pool and out of a gate on the side of the house to the front curb and loaded the boat. They were getting into the truck when they heard Mereadal screaming that Christopher was in the pool. Christopher was found in the pool undressed. His clothes were in a pile on the far side of the pool. Plaintiffs husband and Carver ran to the back yard and found the child in a semi-conscious state. Mrs. Robuck testified that upon hearing the screaming she immediately went outside and started administering cardiopulmonary resuscitation (CPR). She stated that the child hád a pulse and he opened his eyes. Plaintiffs husband testified that he last saw Christopher in the front yard. The testimony of. two other witnesses also placed the children in front of the Peterson house before the adults went in to eat fish. Plaintiffs husband also testified that the gate between.the front and back yards had to be propped open and was, on that occasion, propped open by a large rock kept near the gate. Other testimony indicated that the gate did not have to be propped open, but would remain open by itself, if opened more that three quarters wide. Some witnesses testified that the gates were always closed. Others testified that they were open most of that |7day because the men were going back and forth, loading the boat. Therefore, plaintiff argued that the evidence supports a finding that the children were in the front yard and that Christopher wandered through the open gate to the back yard and fell into the pool.
While plaintiff is correct about the testimony upon which she relies, when considered *1240 with the other evidence presented, it does not support her case. Plaintiff herself testified that when she returned to the house at about 7:00 or 7:15 p.m., there were no children in the front yard and she found the adults inside eating. She found most of the children inside, although she did not personally see Christopher. However, it was after her return that Carver stated that he heard a conversation between Christopher and her husband inside in the kitchen while the adults were eating fish. In his deposition he stated that plaintiff’s husband then let Christopher out of the back door, although he could not remember it at trial. All of the testimony was in agreement that Christopher could not open the doors to the house by himself. Therefore, someone had to let him out of the house. There was also testimony to the effect that Christopher was a very active child, who had to be watched constantly and had been told earlier in the day to get his feet out of the swimming pool. Clearly, there was ample evidence presented to support the finding that Christopher gained access to the pool area through the back door to the house. Also, there was no evidence regarding use of the pool light or how that may have caused or contributed to the accident. Mereadal, who found the child, stated that he had no trouble seeing the child in the pool. The trial judge heard all of the evidence, decided what was more credible and stated his findings of fact.
Therefore, after reviewing the entire record, we find no merit in | «plaintiffs arguments on appeal that the trial judge’s findings are manifestly erroneous or clearly wrong. To the contrary, the record provides a reasonable basis for the trial judge findings that the ordinance violation and inoperable pool light were not causally related to the child’s drowning and that there was no negligence proven against Edward Peterson to find him liable for the accident.[2]
Accordingly, for the reasons stated above, we affirm the trial court judgment dismissing plaintiffs case. Costs of court are assessed against plaintiff.
AFFIRMED.
GAUDIN, J., dissents in part.

. Although Edward Peterson was named as a defendant in the case, he was never served. He was accordingly dismissed from the suit by a Judgment of Dismissal at the conclusion of plaintiff's case. This dismissal has not been assigned as an error on appeal.

. Upon finding that there was no negligence proven on the part of the homeowner, Edward Peterson, we find it unnecessary to address the question of exactly whose negligence caused this horrible accident. It was most likely caused, as found by the trial judge, because "all of the adults present at the Peterson home were under the assumption that someone else was watching the children.”